ARN et al.

v.

McLEAN et al., Appellants; State Farm & Fire Casualty Company, Appellee.

[Cite as *Arn v. McLean,* 159 Ohio App.3d 662, 2005-Ohio-654.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2004–CA–77.

Decided Feb. 18, 2005.

A. Mark Segreti, for appellants.

T. Andrew Vollmar, for appellee.

BROGAN, Presiding Judge.

{¶ 1} This case involves a claim for underinsured-motorist ("UIM") coverage under umbrella policy No. 35–03–9984–0 issued by State Farm & Fire Casualty Company to Carol and Terence McLean. The policy was originally effective on February 21, 1989, had liability limits of $1,000,000, and was written without uninsured-motorists ("UM") or UIM coverage. As the applicant, Mr. McLean originally rejected UM/UIM coverage. Subsequently, on April 7, 1997, the McLeans both signed a written form, rejecting UM/UIM coverage for the policy. In particular, the form stated:

{¶ 2} "I (we) acknowledge and agree that I (we) have been offered Uninsured Motor Vehicle Coverage in an amount equal to the limits of my (our) Personal Liability Umbrella Policy. However, I (we) choose to reject Uninsured Motor Vehicle Coverage.

{¶ 3} "I (we) understand that this acceptance/rejection will apply to this policy, the current and future renewals of the policy, and on all replacement policies unless I (we) later make a written request to change the coverage."

{¶ 4} The policy was renewed thereafter without UM/UIM coverage. On February 21, 2002, when the policy was renewed, State Farm included a paragraph on the renewal certificate stating:

{¶ 5} "You have been provided the opportunity to purchase Uninsured Motor Vehicle Coverage, including underinsured motor vehicle protection in an amount equal to your limits for bodily injury liability coverage. A named insured or an applicant has declined to purchase Uninsured Motor Vehicle Coverage (including underinsured motor vehicle protection). If you want to purchase Uninsured Motor Vehicle Coverage or have questions, please contact your agent."

{¶ 6} On July 12, 2002, Mrs. McLean was involved in an auto accident with a van that was being driven by Russell Arn and was owned by Bellbrook Canoe Rental. At the time, the umbrella policy was in effect. In addition, the McLeans had an underlying automobile insurance policy with State Farm, with liability and

UM/UIM limits of $100,000 per person and $300,000 per accident. Mrs. McLean was seriously injured in the accident and received injuries to her right foot and ankle and left arm and leg. Ultimately, the driver of the van filed a personal-injury action against Mrs. McLean, who then filed a counterclaim, based on the bodily injuries she had received. The McLeans also filed a third-party complaint against State Farm, claiming that they were entitled to UIM benefits under the umbrella policy.

{¶ 7} Subsequently, State Farm filed a motion for summary judgment on the coverage issue. The McLeans then filed a response, as well as a cross-motion for summary judgment. In a brief entry, the trial court granted summary judgment to State Farm and overruled the McLeans' motion for summary judgment. The court also entered a Civ.R. 54(B) certification, because of the presence of other pending issues.

{¶ 8} In support of their appeal, the McLeans assert the following single assignment of error:

{¶ 9} "The trial court erred in granting summary judgment in favor of State Farm and against the McLeans dismissing their cross-claim for uninsured motorist coverage to the limits of their personal umbrella policy, and denying their cross motion."

{¶ 10} After considering the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 11} To decide whether a trial court properly granted summary judgment, we review the decision de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty* (2000), 140 Ohio App.3d 494, 496, 748 N.E.2d 116. Summary judgment is appropriately granted where the trial court finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 12} Unfortunately, the trial court in this case did not offer any specific reasons for its decision. For purposes of analysis, we will simply assume that the court agreed with the position that State Farm advocated below.

{¶ 13} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of

the contracting parties." *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. Accordingly, the first issue to be decided is the effective date of the umbrella policy.

{¶ 14} The policy in this case was first issued on February 21, 1989. While that was the original effective date, *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, indicates that R.C. 3937.31(A) provides for two-year policy periods and that "commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Id. at paragraph two of the syllabus. Consequently, the proper analysis in UIM cases is to begin at the original effective date and count forward in two-year increments. 88 Ohio St.3d at 250, 725 N.E.2d 261. In the present case, this means that the parties entered into new contracts of insurance in 1991, 1993, 1995, 1997, 1999, and 2001. Because Mrs. McLean's accident happened on July 20, 2002, the latest new contract of insurance would have been effective on February 21, 2001. At that time, the statutory law required automobile liability policies to contain UM coverage unless such coverage had been expressly rejected by the insured. Former R.C. 3937.18(A), 2000 Sub.S.B. No. 267 ("S.B. 267") 148 Ohio Laws, Part V, 11380; *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, at paragraph one of the syllabus. If UM/UIM coverage was not expressly rejected, coverage was provided by operation of law. Id. at paragraph two of the syllabus.

{¶ 15} Under *Wolfe*, insurance policies could also not be altered during the guaranteed two-year period "except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." 88 Ohio St.3d 246, 725 N.E.2d 261, at paragraph one of the syllabus. This could be important to the present case, as it means that State Farm was required to offer UIM coverage at the time of the accident, that UIM coverage existed by operation of law if not expressly rejected, and that any UIM insurance imposed by operation of law would be effective for the policy period between February 21, 2001, and February 21, 2003.

{¶ 16} State Farm contends, however, that changes to the law, including S.B. 267 and 2001 Am.Sub.S.B. No. 97 ("S.B. 97"), apply, and that there was no obligation to offer UM/UIM coverage on February 21, 2002, when the policy was last renewed before the accident. Furthermore, the changes to the law were fully applicable and allowed policy provisions to be altered during *Wolfe*'s two-year "guarantee" period.

{¶ 17} Effective September 21, 2000, division (E) was added by S.B. 267 to R.C. 3937.31. It states:

{¶ 18} "Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section."

{¶ 19} The uncodified law accompanying the addition of R.C. 3937.31(E) states the General Assembly's intent:

{¶ 20} "It is the intent of the General Assembly in amending Section 3937.31 of the Revised Code to make it clear that an insurer may modify the terms and conditions of any automobile insurance policy to incorporate changes that are permitted or required by that section and other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of that section." S.B. 267, Section 5, 148 Ohio Laws, Part V, 11386.

{¶ 21} According to State Farm, this amendment superseded the holding in *Wolfe* and allowed insurers to make changes in policy provisions during the two-year guarantee period. The significance of this point is that the umbrella policy issued to the McLeans was a one-year policy. State Farm could, therefore, modify or change the policy provisions when the policy was renewed at the beginning of the February 21, 2002 policy period. Any such changes would then apply to the determination of coverage at the time of the accident.

{¶ 22} State Farm claims that it did, in fact, make changes and that those changes were authorized by S.B. 97, which was effective October 31, 2001. At that time, S.B. 97 amended R.C. 3937.18(A) by deleting the requirement that insurers provide UM or UIM coverage. In the bill, the General Assembly also stressed its intent to eliminate the possibility of UM coverage being implied by operation of law and to eliminate "any requirement of a written offer, selection, or rejection form for uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages from any transaction for an insurance policy." S.B. 97, Sections 3(B)(2) and (4), effective October 31, 2001.

{¶ 23} As we mentioned earlier, State Farm included a paragraph on the February 2002 renewal certificate indicating that the named insured had been given the opportunity to purchase UM/UIM coverage in an amount equal to the bodily-injury limit but had declined coverage. According to State Farm, this paragraph incorporated previous rejections of UIM coverage and informed the McLeans that the coverage was not included in the policy.

{¶ 24} In contrast, the McLeans claim that UIM coverage arose by operation of law when the new policy was issued on February 21, 2001, that this contractual provision was effective for the two-year period guaranteed under *Wolfe,* and that the contractual rights that arose could not be divested by the subsequent

enactment of S.B. 97. However, the flaw in this argument is that when the new policy was issued, the legislature had already acted to eliminate the two-year guarantee period, during which policy terms could not be altered. Consequently, when the policy was renewed on February 21, 2002, State Farm was free to modify the policy or to incorporate any changes that were then permitted or authorized by law.

{¶ 25} In response to State Farm's arguments, the McLeans contend that the amendment in S.B. 267 was not substantive and that *Wolfe's* two-year guaranteed period of coverage was not eliminated. In particular, the McLeans rely on the fact that the legislature retained the second sentence in R.C. 3937.31(A), which refers to cancellation. Specifically, this sentence says:

{¶ 26} "Where renewal is mandatory, 'cancellation,' as used in sections 3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period."

{¶ 27} According to the McLeans, this language means that an insurer must retain all pre-existing coverages, including UIM coverage arising by operation of law, when it renews a policy of insurance during the two-year period. We disagree. In the first place, this argument ignores the clear meaning of R.C. 3937.31(E), which was added by S.B. 267. It also ignores the very explicit intent of the legislature as expressed in Section 5 of S.B. 267. As we noted, the legislature stated that insurers may modify policies during the two-year period of guaranteed coverage. Admittedly, the legislature could have changed the second sentence of R.C. 3937.31(A) to remove any ambiguity. However, in view of the explicit description of legislative intent, we are not going to grasp at straws to invalidate the General Assembly's intended result.

{¶ 28} Consequently, we agree with State Farm that S.B. 97 applies to this case. We also find that the application is not retroactive, since it covers only the policy period beginning after the effective date of S.B. 97. *Young v. Cincinnati Ins. Co.*, Cuyahoga App. No. 83295, 2004-Ohio-54, 2004 WL 35770, at ¶ 12.

{¶ 29} The McLeans' final argument in this regard is that even if S.B. 97 applies, State Farm's action were not sufficient to affect the coverage when the policy was renewed. Again, we disagree. At the time the February 21, 2002 renewal certificate was issued, R.C. 3937.18(A) stated:

{¶ 30} "Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured motorist

coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages."

{¶ 31} In S.B. 97, the General Assembly also eliminated R.C. 3937.18(C), which had dealt with the insured's rejection of UM/UIM coverage. In addition, S.B. 97 pointedly expressed the General Assembly's intent to do the following:

{¶ 32} "(1) Eliminate any requirement of the mandatory offer of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages;

{¶ 33} "(2) Eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy; [and]

{¶ 34} "* * *

{¶ 35} "(4) Eliminate any requirement of a written offer, selection, or rejection form for uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages from any transaction for an insurance policy." S.B. 97, Section 3(B).

{¶ 36} S.B. 97, Section 3(E) also indicates the General Assembly's intent to supersede the Ohio Supreme Court's holdings in various cases, including *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, and *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, as well as their progeny. Both *Gyori* and *Linko* dealt with the need for written offers and rejections of UIM coverage.

{¶ 37} Consequently, at the time of the February 21, 2002 renewal, State Farm did not have to offer or include UM/UIM coverage with its insurance policies, and such coverage could no longer be implied by operation of law. There was also no longer any need for an offer or a rejection of the coverage. Therefore, State Farm acted appropriately in instructing the insured that UM/UIM coverage was not provided but could be purchased if the insured contacted an agent.

{¶ 38} As we mentioned earlier, State Farm included the following paragraph on the February 21, 2002 renewal certificate:

{¶ 39} "You have been provided the opportunity to purchase Uninsured Motor Vehicle Coverage, including underinsured motor vehicle protection in an amount equal to your limits for bodily injury liability coverage. A named insured or an applicant has declined to purchase Uninsured Motor Vehicle Coverage (including underinsured motor vehicle protection). If you want to purchase Uninsured Motor Vehicle Coverage or have questions, please contact your agent."

{¶ 40} This language was not present on prior renewal certificates that State Farm sent to the McLeans. Furthermore the February 21, 2002 renewal

certificate did not list UM/UIM coverage. Instead, under "Coverages and Limits," the February 21, 2002 renewal certificate contains only the following notation: "L. Personal Liability $1,000,000. Self Insured Retention None."

{¶ 41} The McLeans contend that this was not a sufficient change to the policy because their prior rejections of UM coverage, in 1989 and 1997, were ineffective. We disagree. In our opinion, prior rejections or coverage imposed by operation of law were irrelevant, because State Farm had no obligation to offer UM coverage and there was no need for either a written offer or a rejection when the policy was renewed in February, 2002. On its face, the policy did not contain UM/UIM coverage and, in fact, had never contained UM/UIM coverage. The only way such coverage might have been in effect previously was through a legal fiction adopted by courts—a fiction that was no longer viable in February 2002. Whether one wants to consider the statement on the renewal certificate a change or simply a return of the policy to what it always was before the many amendments to the UM statutes, the fact is that the insured was clearly informed that the policy did not contain UM/UIM coverage.

{¶ 42} Furthermore, the statement on the renewal certificate was factually true on its face. Previously, on February 21, 1989, Terence McLean signed an application for umbrella coverage. Terence is listed as the applicant, and Carol McLean is listed as his spouse. As the applicant, Terence also signed a rejection of UM/UIM coverage, stating:

{¶ 43} "In keeping with the laws of my state, I have been offered the opportunity to 1) purchase Uninsured Motor Vehicle coverage and 2) purchase Uninsured Motor Vehicle coverage in an amount equal to the Uninsured Motor Vehicle coverage limit of this application. I hereby reject the opportunity to purchase these policies as part of this application."

{¶ 44} Subsequently, the policy was issued without UM/UIM coverage and continued to be issued without such coverage until the accident in July 2002. In April 1997, both Terence and Carol McLean signed another written rejection form, stating that they had been offered the opportunity to purchase UM/UIM coverage in an amount equal to the limits of their personal liability coverage, and that they rejected the coverage on all vehicles. The form also stated that it applied to the present policy, current and future renewals of the policy, and all replacement policies unless the insured made a written request to change this coverage.

{¶ 45} Again, whether these rejections might have been effective prior to S.B. 97 is not the point. In order to hold that UM/UIM coverage existed in the present case, we would have to ignore the content of the renewal certificate and policy, the written evidence of the parties' intent, and the legal changes that were effective with regard to this particular insurance contract. We are not willing to

make such a leap of logic, especially when the General Assembly has made its intent so abundantly clear.

{¶ 46} The parties also refer in their briefs to an endorsement for the umbrella policy that defines an "automobile liability policy" for purposes of the underlying insurance policies that were required as a predicate for the umbrella policy. According to the McLeans, this definition is ambiguous and could be read to mean that the umbrella policy must include UM coverage if it is shown in the declarations section of the underlying automobile policy. We disagree. We find no ambiguity in the definition, which states:

{¶ 47} "When shown on the **Declarations** as 'REQUIRED UNDERLYING INSURANCE POLICIES', these terms are defined as follows:

{¶ 48} "a. 'AUTOMOBILE LIABILITY' means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle, trailer, or semi-trailer designed for use on public roads. The policy must include Uninsured and/or Uninsured Motor Vehicle Coverage if this coverage is shown on the **Declarations**."

{¶ 49} The clear meaning of this definition is that if the declarations page of the umbrella policy shows that the umbrella policy covers UM or UIM coverage, the underlying policy must also include such coverage. There is no ambiguity in the definition. The very nature of an umbrella policy is that it does not provide coverage for risks that are not also included in an underlying policy of insurance.

{¶ 50} By the same token, the mere fact that a particular type of risk is covered in an underlying policy does not mean that it is also covered by the umbrella policy. Instead, the declarations page of the umbrella policy and the policy contents must be consulted to see what type of coverage is provided. In this case, as we noted, the umbrella policy lists only "personal liability coverage." It says nothing about UM or UIM coverage, other than the specific statements in the supplemental declarations page and on the renewal certificate that we have already mentioned. As we noted, these statements unambiguously inform the policyholder that the umbrella policy does not provide UM/UIM coverage.

{¶ 51} Moreover, we have read the entire policy, including the declaration page, supplemental declaration page, and endorsement, and see no basis upon which any reader could conclude that the umbrella policy provides any type of UM or UIM coverage. Accordingly, the single assignment of error is without merit and is overruled.

{¶ 52} State Farm has asked for leave to file supplemental authority with our court. The case in question is *Hollon v. Clary*, 104 Ohio St.3d 526, 2004–Ohio–6772, 820 N.E.2d 881, which was decided after State Farm filed its brief. In

*Hollon,* the Ohio Supreme Court held that if an insurer produces a signed rejection of UM/UIM coverage, extrinsic evidence may be used to demonstrate the elements of the offer. Id., at syllabus. *Hollon* involved a prior version of R.C. 3937.18 (as the law existed in 1999). It also clarified *Kemper v. Michigan Millers Mut. Ins. Co.,* 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, which had not fully explained whether extrinsic evidence could be used to prove a valid offer of coverage.

{¶ 53} State Farm's position in the present case is that S.B. 97 applies and that no offer or rejection of UM/UIM coverage was required. Alternatively, however, State Farm argues that if the written rejections from 1989 and 1997 are relevant, *Hollon* would allow us to consider testimony from the McLeans' insurance agent. The agent testified that he would have explained all premiums and coverages to the McLeans when the initial rejection form was signed. Because the rejection forms are not relevant to our decision, *Hollon* has no bearing on this case, and we see no need for the supplement.

{¶ 54} Finally, the McLeans have filed a motion to supplement the record with certain filings and depositions said to be relevant to whether Carol McLean was at fault in the underlying automobile accident. However, since we have ruled in favor of State Farm on the coverage issue, the question of whether Mrs. McLean was at fault in the accident is irrelevant to this appeal. The parties agree that State Farm has already paid Mrs. McLean the limits of her underlying UM/UIM policy (a fact that is admittedly inconsistent with a claim that Mrs. McLean was at fault). However, this dispute has no bearing on the appeal, because the McLeans are not entitled to any additional insurance coverage from State Farm.

## II

{¶ 55} Based on the preceding discussion, the motion for leave to file supplemental authority and the motion to supplement the record are overruled. Further, the single assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF and FAIN, JJ., concur.