JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, State Farm Mutual Automobile Insurance Company ("State Farm"), appeals the trial court's decision granting partial summary judgment in favor of plaintiffs-appellees, Tisher Fruit, Francis Fruit, and Melody Fruit (collectively, the "Fruits"). Finding merit to the appeal, we reverse and grant summary judgment in favor of State Farm.
 {¶ 2} State Farm provided automobile insurance to the Fruits under three separate policies, each including uninsured motorist coverage. In addition, each policy contained a "Total Driver Exclusion Endorsement" excluding Diante Fruit ("Diante") from coverage and denying all coverage to all insureds if bodily injury, loss, or damage occurred while Diante Fruit was operating the insured vehicle.
 {¶ 3} On July 21, 2002, Diante was driving a rental vehicle in which Tisher Fruit and Melody Fruit were passengers. Diante lost control of the vehicle, causing it to leave the roadway and roll over. Tisher and Melody sustained serious injuries and Diante died as a result of his injuries.
 {¶ 4} In 2003, the Fruits filed suit against State Farm, alleging that they were entitled to uninsured motorist coverage under the three separate insurance policies. State Farm claimed that the Fruits were not entitled to uninsured motorist coverage pursuant to the "Total Driver Exclusion Endorsement" executed by Francis and/or Melody Fruit and Diante.
 {¶ 5} Following discovery, both parties moved for summary judgment. The trial court granted State Farm's motion regarding Policy No. 26-7247-D29-35C ("Policy A"), finding that the driver exclusion endorsement properly excluded uninsured motorist coverage. However, it denied State Farm's motion regarding the other two remaining policies, Policy No. 706 7033-D30-35D ("Policy B") and Policy No. 688 0480-A18-35F ("Policy C"), and granted summary judgment to the Fruits, finding that the exclusion endorsement did not exclude uninsured motorist coverage.
 {¶ 6} State Farm appeals the trial court's conclusion that the exclusion endorsement did not exclude uninsured motorist coverage on Policies B and C, raising three assignments of error.[1]
 Standard of Review {¶ 7} Appellate review of summary judgment is de novo.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389,696 N.E.2d 201, as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when(1) there is no genuine issue of material fact, (2) the movingparty is entitled to judgment as a matter of law, and (3)reasonable minds can come to but one conclusion and thatconclusion is adverse to the nonmoving party, said party beingentitled to have the evidence construed most strongly in hisfavor. Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus.The party moving for summary judgment bears the burden of showingthat there is no genuine issue of material fact and that it isentitled to judgment as a matter of law. Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264."
 {¶ 8} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 Applicable Version of R.C. 3937.18 {¶ 9} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d 281, 289, 1998-Ohio-381, 695 N.E.2d 732. Further, when an insurance policy is renewed, the date of the renewal determines the law that was in effect at that time. Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261, syllabus; Daltonv. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015, ¶ 20. However, a policy cannot be amended to reflect statutory changes that occur during the guaranteed two-year period; an amendment does not take effect until the expiration of that two-year period. Storer v. Sharp, Cuyahoga App. No 86525,2006-Ohio-1577, citing R.C. 3937.31; Shay v. Shay,164 Ohio App.3d 518, 2005-Ohio-5874, 843 N.E.2d 194; Arn v. McLean,159 Ohio App.3d 662, 2005-Ohio-654, 825 N.E.2d 181.
 {¶ 10} The record shows that Policy B took effect April 30, 1994, renewing every six months, but guaranteed for two years. The new two-year guarantee period, covering the July 21, 2002 accident, would have commenced on April 30, 2002. Therefore, the law in effect on April 30, 2002 governs. At that time, the current version of R.C. 3937.18, as amended by 124 S.B. 97, was in effect.
 {¶ 11} Policy C took effect January 18, 1992, renewing every six months, but guaranteed for two years. The new two-year guarantee period covering the July 21, 2002 accident, commenced on January 18, 2002. Therefore, the law in effect on January 18, 2002 governs. At that time, the current version of R.C. 3937.18, as amended by 124 S.B. 97, was in effect.
 {¶ 12} The trial court found, without explanation, that Policies B and C were governed by a former version of R.C.3937.18, as amended by 147 H.B. 261, effective September 3, 1997. We find nothing in the record to support the court's conclusion. Even if this version of R.C. 3937.18 were applicable, the court misapplied and misinterpreted the statutory language concerning exclusions.
 {¶ 13} In 147 H.B. 261, effective September 3, 1997, the General Assembly mandated that all automobile insurance policies offer uninsured and underinsured motorist coverage for loss due to bodily injury or death suffered by an insured. However, it added a provision that uninsured and underinsured coverages may include terms and conditions that would preclude coverage for bodily injury or death suffered by an insured. See, former R.C.3937.18(J). One circumstance would be:
"When the bodily injury or death is caused by a motor vehicleoperated by any person who is specifically excluded from coveragefor bodily injury liability in the policy under which theuninsured and underinsured motorist coverages are provided."Former R.C. 3937.18(J)(3).
 {¶ 14} Therefore, even if we found that the policies at issue are governed by former R.C. 3937.18, as amended by 147 H.B. 261, the executed endorsements excluding Diante Fruit would preclude uninsured motorist coverage to all the insureds.
 {¶ 15} In response to the plethora of lawsuits arising from uninsured and underinsured motorist coverage, the General Assembly again revised R.C. 3937.18. See, 124 S.B. 97, effective October 31, 2001. This current version of R.C. 3937.18 deleted the mandatory language of providing uninsured and underinsured motorist coverage. "Any policy of insurance * * * may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverage." R.C. 3937.18(A). However, the exclusion provision remained and continued to allow any policy that included uninsured and/or underinsured motorist coverage, to also include terms or conditions that precluded coverage for bodily injury suffered by an insured when the injury was caused by a motor vehicle operated by any person who is specifically excluded from coverage under the policy. R.C. 3937.18(I)(3).
 {¶ 16} Therefore, under the law in effect at the time of the accident and applicable to the Fruits' policies, State Farm was no longer required to offer uninsured motorist coverage to its insureds, and a valid driver exclusion endorsement could limit or preclude uninsured motorist coverage.
 {¶ 17} The Fruits cite several cases for the proposition that insurance companies cannot limit or exclude uninsured motorist coverage. Stanton v. Nationwide Mut. Ins. Co. (1993),68 Ohio St.3d 111, 623 N.E.2d 1197; State Farm Auto. Ins. Co. v.Alexander (1992), 62 Ohio St.3d 397, 583 N.E.2d 309; Brittainv. Progressive Preferred Ins. Co. (Nov. 2, 2000), Cuyahoga App. No. 77440; United Services Auto. Assoc. v. Gambucci (Feb. 18, 2000), Richland App. No. 99CA65; Heindle v. Luke (Apr. 22, 1996), Brown App. No. 95-12-025. However, these cases are clearly distinguishable because they interpreted the pre-1997 version of R.C. 3937.18, which mandated uninsured and/or underinsured motorist coverage and which did not allow any limitations or exclusions that were contrary to Ohio law.
 {¶ 18} In Brittain, the insurance policy at issue took effect in 1994, and the accident occurred in 1994. This court reviewed a policy restriction that fell outside the then-applicable statutory requirements. In holding that a policy may not use liability exclusions to reduce or eliminate uninsured or underinsured motorist coverage, the court stated that a driver exclusion in such policy was invalid because it eliminated or excluded the insured's statutory right to uninsured motorist coverage. Id. Brittain is clearly distinguishable from the instant case.
 {¶ 19} Because current R.C. 3937.18 no longer requires that policies offer uninsured and/or underinsured motorist coverage, driver exclusion provisions would not be contrary to statutory law. Furthermore, R.C. 3938.18 expressly allows a party to limit uninsured and/or underinsured motorist coverage by executing driver exclusion provisions. Finally, the General Assembly, in enacting the current version of R.C. 3937.18, expressly stated its intent: to eliminate any requirement of offering uninsured motorist coverage, to eliminate the possibility of uninsured motorist coverages being applied as a matter of law, to provide statutory authority for the inclusion of exclusionary or limiting provisions of uninsured motorist coverage, to eliminate any requirement of a written offer, selection or rejection form for uninsured motorist coverage, and to supersede the holdings, on which the Fruits rely, of Linko v. Indemn. Ins. Co. of N. Am.,90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338, and Sexton v.State Farm Mutl. Automobile Ins. Co. (1982), 69 Ohio St.2d 431,433 N.E.2d 555.
 {¶ 20} Therefore, if the Fruits' insurance policies contain valid driver exclusion endorsements in effect on the date of the accident, the current version of R.C. 3937.18 would preclude coverage for the Fruits' uninsured motorist claims.
 Driver Exclusion Endorsement {¶ 21} In its first and second assignments of error, State Farm argues that the trial court erred in holding that there was coverage under Policies B and C. It claims that the named insureds under each of the policies had executed driver exclusion endorsements, thereby agreeing that there would be no coverage under the policy if the excluded driver was operating the vehicle at the time of the accident.
 Policy B {¶ 22} Policy B, Policy No. 706 7033-D30-35D, was issued to Melody and Francis Fruit and at the time of the accident covered a 1994 Dodge Intrepid. In 1999, in connection with this policy, a "Total Driver Exclusion Endorsement" was signed by Melody Fruit and the excluded driver, Diante Fruit. The exclusion specifically provided:
"I agree to an amendment in the policy or policies by thefollowing endorsement which is to be included in any subsequenttransfer, renewal or reinstatement of such policy or policies:
 IN CONSIDERATION OF THE PREMIUM CHARGED FOR YOUR POLICY IT ISAGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OFANY KIND SHALL ATTACH TO US FOR BODILY INJURY, LOSS OR DAMAGEUNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLEIS OPERATED BY Diante Fruit."
 {¶ 23} The Fruits argue that, because the exclusion was specifically executed under Policy No. 706 7033-D30-35A, and not under the policy in effect at the time of the accident designated with a "D" at the end, the exclusion is invalid. Furthermore, they claim that because the policy was a "replacement" and not a "transfer, renewal or reinstatement" of the policy, the exclusion endorsement does not apply to the policy in effect on the date of the accident. We disagree.
 {¶ 24} It is irrelevant that the exclusion endorsement was executed under Policy No. 706 7033-D30-35A and not under the policy designated with "D," in effect at the time of accident. State Farm submitted the affidavit of Mary Ellen Price, Auto Underwriting Administrator for State Farm Mutual Automobile Insurance, in which she explained that "replacement policies are issued as a result of subsequent transfers and are indicated by the progression of alphabetic change codes at the end of the base policy number." Therefore, although the alphabetic code changes on each two-year guarantee period, the base policy number remains. Because the exclusion endorsement was executed under the base policy number of 706 7033-D30-35, we find that it remains in effect on all subsequent alphabetic code changes, until the endorsement is specifically removed.
 {¶ 25} Furthermore, this court has found that an endorsement validly executed by the parties becomes part of the insurance contract. Brown v. Insurance Co. (1978), 63 Ohio App.2d 87,409 N.E.2d 253, citing Workman v. Republic Mut. Ins. Co. (1944),144 Ohio St. 37, 56 N.E.2d 190. See, also, Skinner v.Progressive Ins. Co. (Feb. 3, 2000), Cuyahoga App. No. 76603. Because an endorsement is incorporated as part of the policy, a repetition of the endorsement in the renewal notice is not necessary. Brown, supra at 91.
 {¶ 26} Moreover, the parties stipulated that Diante was an uninsured motorist on the date of the accident. This uninsured status occurred because of the driver exclusion endorsement contained in each insurance policy. Therefore, the Fruits' argument that the exclusion endorsement did not apply to the insurance policies at issue contradicts their own stipulation that Diante was not an insured because of the endorsement. If it did not apply to the current policies, then Diante would be considered an insured under the terms of the policies. This is clearly not the case.
 {¶ 27} Therefore, we find the Fruits' argument that the exclusion endorsement does not apply to this replacement policy to be without merit.
 {¶ 28} We also find that the driver exclusion was in effect when the accident occurred. Silas Buchanan, the Fruits' State Farm agent, testified at deposition that Policy B contained an exclusion endorsement which was in effect at the time of the accident. To support his testimony, he referenced a computer printout titled "Auto Policy Status" pertaining to Policy B. At the bottom of the printout is a reference to the driver exclusion endorsement for Diante Fruit, effective 06-09-1999. The agent testified that the printout was current and covered the time period of the July 2002 accident. No objection was made regarding the authenticity of this printout and no evidence was presented to refute this testimony or documentation that the endorsement was part of the policy on the date of the accident.
 {¶ 29} Therefore, the driver exclusion was in effect when the accident occurred, and according to the clear and unambiguous language of the driver exclusion endorsement, there is no coverage under Policy B because the excluded driver, Diante Fruit was operating the vehicle at the time of the accident.
 {¶ 30} The trial court erred in denying State Farm's motion for summary judgment regarding Policy B and erred in granting summary judgment in favor of the Fruits. Accordingly, we enter judgment in favor of State Farm regarding Policy B because no coverage is afforded to the insureds by virtue of the valid driver exclusion endorsement.
 Policy C {¶ 31} Policy C, Policy No. 688 0480-A18-35F, was issued to Francis Fruit and at the time of the accident covered a 1997 Dodge Ram truck. In 1999, in connection with this policy, a "Total Driver Exclusion Endorsement" was signed by Francis Fruit and the excluded driver, Diante Fruit. The exclusion specifically provided:
"I agree to an amendment in the policy or policies by thefollowing endorsement which is to be included in any subsequenttransfer, renewal or reinstatement of such policy or policies:
 IN CONSIDERATION OF THE PREMIUM CHARGED FOR YOUR POLICY IT ISAGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OFANY KIND SHALL ATTACH TO US FOR BODILY INJURY, LOSS OR DAMAGEUNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLEIS OPERATED BY Diante Fruit."
 {¶ 32} The Fruits again argue that because the exclusion was specifically executed under Policy No. 688 0480-A18-35C, and not under the policy in effect at the time of the accident, the exclusion is not valid. Furthermore, they claim that because the policy was a "replacement" and not a "transfer, renewal or reinstatement," the exclusion does not apply to the policy in effect on the date of the accident. Again, we disagree with these arguments for the reasons stated above in our discussion concerning Policy B.
 {¶ 33} Moreover, the declaration page for Policy C clearly provides that "Your policy consists of this declarations page, the policy booklet — form 9835A, and any endorsements that apply, including those issued to you with any subsequent renewal notice." Therefore, we find the Fruits' argument that the exclusion endorsement does not apply to this replacement policy to be without merit.
 {¶ 34} We also find that the driver exclusion was in effect when the accident occurred. The declaration page for Policy C demonstrates that the two-year guaranteed period covered the date of the accident. On the declaration page, under "Exceptions and Endorsements," Diante Fruit is listed as an excluded driver. Had the driver exclusion applied only to 688 0480-A18-35C as the Fruits suggest, it would not appear on subsequent policy replacements. Therefore, it is clear that the exclusion is incorporated into all subsequent replacement two-year guaranteed periods.
 {¶ 35} Therefore, the driver exclusion was in effect when the accident occurred, and according to the clear and unambiguous language of the driver exclusion endorsement, there is no coverage under Policy C because the excluded driver, Diante Fruit, was operating the vehicle at the time of the accident.
 {¶ 36} The trial court erred in denying State Farm's motion for summary judgment regarding Policy C and in granting summary judgment in favor of the Fruits. Accordingly, we enter judgment in favor of State Farm regarding Policy C because no coverage is afforded to the insureds by virtue of the valid driver exclusion endorsement.
 {¶ 37} The Fruits argue that even if the driver exclusion endorsements were valid as to the insureds who signed them, they are still insureds under the other State Farm policies with regard to which they did not sign a driver exclusion agreement. In support of this argument, they cite Kennison v. ProgressiveIns. Co. (May 3, 1996), Lake App. No. 95-L-080. However, we find that Kennison supports State Farm's position that, if the policies and exclusions expressly and unambiguously exclude coverage to any insured, then uninsured motorist coverage is precluded.
 {¶ 38} The language of the relevant State Farm policies' uninsured motorist coverage sections, clearly and unambiguously provides that there is no coverage for bodily injury to an insured when "the bodily injury is caused by a motor vehicle operated by any person who is specifically excluded from the coverage provided by Section I-Liability-Coverage A of this policy." Section III-Uninsured Motor Vehicle-Coverage U and Uninsured Motor Vehicle Property Damage-Coverage U1.
 {¶ 39} Furthermore, all the exclusion endorsements clearly provide that State Farm is immune from liability of any kind under any of the coverages of the policy while the motor vehicle is operated by the excluded driver.
 {¶ 40} Therefore, unlike the ambiguous language contained inKennison, the State Farm policies in the instant case clearly preclude coverage to all insureds under the policies if injury or loss occurs while an excluded driver is operating the motor vehicle. The Fruits' alternate argument is without merit.
 {¶ 41} Accordingly, State Farm's first and third assignments of error are sustained.
 Conclusion {¶ 42} Because we find merit in State Farm's first and third assignments of error and enter judgment in its favor, we need not address State Farm's second assignment of error in which it argues preclusion of uninsured motorist coverage. We also find no merit to the Fruits' argument that Francis Fruit is entitled to coverage under all the State Farm policies regardless of the existence of the driver exclusion endorsements because the policy language excludes coverage only for bodily injury and not loss of consortium.
 {¶ 43} It is well settled that a claim for loss of consortium is a derivative action that is dependent on the existence of a primary cause of action and can be maintained only so long as the primary action continues. Messmore v. Monarch Machine Tool Co.
(1983), 11 Ohio App.3d 67, 68-69, 463 N.E.2d 108. Because the Fruits are unable to successfully maintain their primary causes of action, Francis Fruit's loss of consortium claim must also necessarily fail. Accordingly, the trial court erred in granting summary judgment in favor of Francis Fruit on his loss of consortium claim.
Judgment reversed and summary judgment entered for State Farm.
It is, therefore, considered that said appellant recover of said appellees the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Anthony O. Calabrese, Jr., J. and Michael J. Corrigan, J.concur.
[1] No argument is raised on appeal challenging the decision regarding Policy A.