DECISION.
{¶ 1} Plaintiff-appellant Barrett St. Clair, as executor of the estate of his deceased wife, Diane St. Clair, appeals from the trial court's entry of summary judgment in favor of defendant-appellee Allstate Insurance Co. in a declaratory-judgment action. The issue before the trial court was whether the St. Clairs' personal umbrella insurance policy with Allstate provided underinsured-motorists coverage to the St. Clairs on January 9, 2003, when Diane was fatally injured in an automobile accident. After reviewing the record and the law, we hold that the policy did not provide underinsured-motorists coverage, and we affirm the judgment of the trial court.
 {¶ 2} The St. Clairs first purchased the Allstate umbrella insurance policy on July 29, 1999. The policy renewed every year on the same date. The declarations page of the 1999 policy stated, "Uninsured Motorists Insurance Rejected." But Allstate admitted that it did not have a signed waiver from the St. Clairs in 1999 rejecting uninsured/underinsured (UM/UIM) coverage. Ohio law at the time required a signed waiver. Because of the invalid waiver, under the holdings of the Ohio Supreme Court in Linko v.Indemnity Ins. Co. of N. America[1] and Gyori v. JohnstonCoca-Cola Bottling Group, Inc.,[2] on July 26, 1999, when the policy first came into effect, the St. Clairs had UM/UIM benefits that arose by operation of law.
 {¶ 3} But the legislature superseded the holdings of Linko
and Gyori by statute in S.B. No. 97, effective October 31, 2001. This act amended R.C. 3937.18(A) to eradicate the requirement that an insurer offer UM/UIM coverage. The legislature also deleted the written-rejection requirement that had been set out in R.C. 3937.18(C). In the uncodified portion of the act, the legislature stated its intent to eliminate the possibility of UM/UIM coverage being implied by operation of law and to eliminate any requirement of a written offer, selection, or rejection form for UM/UIM coverage in any transaction for an insurance policy.[3]
 {¶ 4} In March 2005, St. Clair as executor sought to recover UIM benefits under the umbrella policy and filed a declaratory-judgment action. Both parties filed cross-motions for summary judgment. St. Clair argued that the UIM benefits remained in the policy despite the enactment of S.B. No. 97. Allstate countered that the provisions of S.B. No. 97, which became effective before the policy renewed in July 2002, governed the rights of the parties and eliminated any UIM coverage that had arisen by operation of law during a previous contract period. The trial court granted Allstate's motion and overruled St. Clair's motion. St. Clair then filed this appeal.
 {¶ 5} In his sole assignment of error, St. Clair challenges the trial court's entry of summary judgment for Allstate and its denial of his motion. We review a trial court's decision on a summary-judgment motion de novo, applying the standards set out in Civ.R. 56.[4]
 {¶ 6} The parties are disputing which law governed their rights and duties under the insurance contract. "For the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."[5]
 {¶ 7} In Ohio, the commencement and cancellation of an automobile insurance policy is governed by R.C. 3937.31. R.C.3937.31(A) provides that "[e]very automobile insurance policy shall be issued for a period of not less than two years or guaranteed renewable for successive policy periods not totaling less than two years. Where renewal is mandatory, `cancellation' * * * includes refusal to renew a policy with at least the coverages, including the insureds, and policy limits provided at the end of the next preceding policy period." R.C. 3937.31(E) provides that an insurer may incorporate into a policy "any changes that are permitted or required" by the UM/UIM laws "at the beginning of any policy period within the two-year period" described in R.C. 3937.31(A).
 {¶ 8} This latter provision, division (E), was added as an amendment to R.C. 3937.31 as part of S.B. No. 267, effective September 21, 2000. Also as part of this amendment, the legislature deleted "policy" as a modifier of the word "period" in the first sentence of R.C. 3937.31(A). The provision formerly read that "[e]very automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods not totaling less than two years. * * *" In making this change, the legislature made a distinction between the "two-year guaranteed period" and the "policy period," which is defined by any renewals during the two-year guaranteed period.
 {¶ 9} Allstate argues that R.C. 3937.31 as amended by S.B. No. 267 allows insurers to incorporate new statutory provisions into an automobile insurance policy for any renewal of the policy during the two-year guaranteed period set forth in R.C.3937.31(A). Thus, to determine when a policy was entered into and to determine the governing law, Allstate contends that one must look to the last renewal date of the policy before the accident.
 {¶ 10} Allstate recognizes that this interpretation of R.C.3937.31 conflicts with the holding of the Ohio Supreme Court inWolfe v. Wolfe.[6] In Wolfe, the court interpreted R.C.3937.31 prior to the S.B. No. 267 amendments, holding that an automobile insurance policy issued in Ohio "must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39."[7] Because of this, a new contract began, for purposes of determining the applicable law, only at the commencement of the two-year guaranteed period.[8] Thus, to determine when a policy was entered into under Wolfe, one would begin at the effective date of the policy and count forward in two-year increments.[9]
Under Wolfe, the St. Clairs' two-year guarantee period began on July 26, 2001, prior to the effective date of S.B. No. 97.
 {¶ 11} The court's holding in Wolfe prevented an insurer during this two-year guaranteed period from canceling bargained-for coverages, except by agreement of the parties and in accordance with the relevant statutory provisions governing cancellations. Additionally, the holding prevented an insurer during this two-year guaranteed period from adopting statutory changes that would have the effect of canceling coverages that had arisen by operation of law. In other words, under Wolfe, an insurer could not incorporate new statutes such as S.B. No. 97 into the policy until after the expiration of the two-year guaranteed period and the start of a new guaranteed period.
 {¶ 12} In amending R.C. 3937.31, the legislature did not state its intent to supersede any part of the Wolfe holding. But the language used by the legislature in the statute indicates an intent to do so. As a result, we hold that when a policy is actually renewed as defined in the contract during the two-year guaranteed period, the law in effect at the time of the renewal governs the scope of the UM/UIM coverage.
 {¶ 13} Our holding is consistent with the Second Appellate District's decision in Arn v. McLean[10] and the Tenth Appellate District's decision in Advent v. Allstate Ins.Co.,[11] in which the respective courts entertained facts very similar to those in this case. In Arn, the court rejected the insured's argument that UIM coverage arose by operation of law at the time of a renewal in an umbrella policy even though the benefits would have arisen by law at the start of the two-year guaranteed period.[12] In Advent, the court rejected the insured's argument that UM/UIM coverage arose by operation of law in an amount equal to the liability coverage limit at the time of renewal even though the higher limit would have arisen by operation of law at the start of the two-year guaranteed period.[13]
 {¶ 14} The Arn court addressed the argument that the incorporation of S.B. No. 97 into the renewed policy would retroactively impair the insured's contract rights.[14] The court rejected this argument after noting that S.B. No. 267 had become effective prior to the start of the two-year guaranteed period and that S.B. No. 97 had become effective prior to the start of a new policy period during the two-year guaranteed period.[15]
 {¶ 15} Ultimately, both the Arn and the Advent courts held that because of the amendments to R.C. 3937.31, the insurer was free to incorporate into the policy any changes that were then permitted or authorized by law when the policy renewed during the two-year guaranteed period.[16]
 {¶ 16} Like the Arn and the Advent courts, we hold that the amendments to R.C. 3937.31 have superseded a part of the holding in Wolfe. Now a policy must be guaranteed renewable for two years, but the insurer can incorporate into a renewal policy statutory changes that will then govern the scope of UM/UIM coverage in the policy.[17] Additionally, where, as in this case, S.B. No. 267 was effective prior to the start of the last two-year guaranteed period and S.B. No. 97 was effective prior to the date of the last renewal, the application of these provisions to determine the scope of the UM/UIM coverage in an insurance policy does not retroactively impair the insured's contract rights.
 {¶ 17} St. Clair makes an additional argument against summary judgment. He argues that even if the renewal policy could have been governed by the provisions of S.B. No. 97, automatically removing the coverage by operation of law, Allstate failed to effectively "change" the policy. He claims that Allstate violated its own protocol of announcing to the insured any change in the policy; because Allstate failed to announce the change, the change could not have taken place.
 {¶ 18} Allstate counters by arguing that it did actually incorporate the S.B. No. 97 changes into the policy and that it informed the St. Clairs of these changes. The cover page of the renewal policy stated, "This policy renewal offer contains your renewal documents, including the Policy Declarations, which lists your coverages, limits, premium, and any discounts you're receiving. * * * Also enclosed in this mailing are ImportantNotices that provide information about your insurance policy andthat describe changes affecting your coverage. * * * Please be sure to read these Important Notices and all of the other documents enclosed in this mailing completely and carefully."
 {¶ 19} A notice included in the renewal package provided the following information:
 {¶ 20} "We'd like to let you know that we've made some changes to Uninsured Motorists Insurance coverage. Uninsured Motorists Insurance coverage will no longer be available to be added to Personal Umbrella or Recreational Package policies. If you don't currently have Uninsured Motorists Insurance coverage on your policy, you will not be able to add it.
 {¶ 21} "If you currently have Uninsured Motorists Insurance coverage on your policy, you will continue to have the coverage at your existing limits. Effective immediately, you can increase or decrease your limits for Uninsured Motorists Insurance coverage by simply calling your Allstate representative and letting him or her know what change you'd like to make to your existing coverage. There will be no forms to sign. You can also remove Uninsured Motorists Insurance coverage from your policy. However, if you remove the coverage, you will not be able to add the coverage to your policy at a later date. Once Uninsured Motorists Insurance coverage is removed from the policy, it is no longer available.
 {¶ 22} "If you have any questions or concerns regarding Uninsured Motorists Insurance coverage, or to change your existing coverage, please contact your agent."
 {¶ 23} St. Clair argued that this notice merely confirmed the existence of UM/UIM coverage. Allstate was required to notify the St. Clairs that any UM/UIM coverage previously implied by law was removed from the renewal policy.
 {¶ 24} We cannot agree that the notice actually confirmed UM/UIM coverage, where St. Clair did not produce any evidence that he or his wife actually knew that they had coverage under the prior policy by operation of law; where UM/UIM coverage was not listed on the declarations page of the policy renewed in July 2002; and where, as conceded by St. Clair, none of the previous policies listed UM/UIM coverage on the declarations page.
 {¶ 25} Rather, the evidence undisputedly demonstrates that the policy did not contain UIM coverage. The July 2002 renewal policy stated that a new policy period began on July 29, 2002. The law in effect at the time of the last renewal, S.B. No. 97, did not require Allstate to offer UM/UIM coverage, and the St. Clairs did not actually have that coverage in the policy prior to the renewal apart from the legal fiction. We decline to recognize the implication of coverage where the legislature has clearly spoken on this issue.[18] Accordingly, Allstate was entitled to judgment as a matter of law. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Sundermann, P.J., Hendon and Winkler, JJ.
Ralph Winkler, retired, from the First Appellate District, sitting by assignment.
[1] 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
[2] 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824.
[3] S.B. No. 97, Sections 3(B)(2) and (B)(4).
[4] See Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243.
[5] Ross v. Farmers Ins. Group of Cos., 82 Ohio St.3d 281,1998-Ohio-381, 695 N.E.2d 732, syllabus.
[6] 88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261.
[7] Id. at paragraph one of the syllabus.
[8] Id. at 250.
[9] Id.
[10] 159 Ohio App.3d 662, 2005-Ohio-654, 825 N.E.2d 181.
[11] 10th Dist. No. 06AP-103, 2006-Ohio-5522.
[12] Arn at ¶ 27.
[13] Advent at ¶ 23.
[14] Arn at ¶ 28.
[15] Id.
[16] Arn at ¶¶ 21-28; Advent at ¶ 31.
[17] Cf. Storer v. Sharp, 8th Dist. No. 86525, 2006-Ohio-1577
(holding that a policy cannot be amended to reflect statutory changes at a renewal during the guaranteed two-year period).
[18] See Arn at ¶ 45.