WICKERHAM, Appellant,

v.

PROGRESSIVE INSURANCE COMPANIES, Appellee.

[Cite as *Wickerham v. Progressive Ins. Cos.*, 166 Ohio App.3d 180, 2006-Ohio-964.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–05–013.

Decided March 3, 2006.

---

Eric A. Mertz, for appellant.

Jeffrey J. Madrzykowski, for appellee.

———————

HANDWORK, Judge.

{¶ 1} This case is before the court on accelerated appeal from the judgment of the Williams County Court of Common Pleas that granted appellee, Progressive Insurance Companies ("Progressive"), summary judgment against appellant, Christopher J. Wickerham, on appellant's claim for underinsured-motorist coverage and denied appellant's motion for summary judgment. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} On appeal, appellant raises the following assignments of error:

{¶ 3} "Assignment of Error No. 1

{¶ 4} "The trial court erred in granting summary judgment to Progressive Insurance Companies because Christopher Wickerham has not received compensation in an actual amount that is equal to or exceeds his underinsured policy limits.

{¶ 5} "Assignment of Error No. 2

{¶ 6} "The trial court erred in not granting summary judgment to Mr. Wickerham because Progressive did not respond to Mr. Wickerham['s] summary judgment motion before the court ordered deadline in accordance with Civil Rule 56(E)."

{¶ 7} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and when, construing the evidence most strongly in favor of the nonmoving party, reasonable minds can conclude only that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 8} Leland Wickerham ("decedent") died on May 3, 2003, as a result of injuries sustained in a one-vehicle roll-over accident. Decedent was a passenger in a vehicle operated by Christopher N. Davis, who was insured by Travelers Insurance Companies with a liability limit of $50,000. Decedent's estate received $50,000 from the tortfeasor's liability insurer. The proceeds of his estate were divided equally between his parents.

{¶ 9} At the time of his death, decedent was a private in the United States Army, stationed in Fort Huachuca, Arizona. Decedent's permanent address was with appellant, his father, and, therefore, he was an insured under appellant's liability policies with Progressive. Appellant had two policies with Progressive, which provided underinsured-motorist coverage in the amounts of $12,500 per person/$25,000 per accident and $50,000 per person/$100,000 per accident. The policies provided that they could "not be stacked with other uninsured or underinsured-motorist coverage." The policies further stated that the limit of liability shown on the declarations page for underinsured-motorist coverage was the most Progressive would pay, regardless of the number of claims made, covered vehicles, insured persons, or lawsuits brought. Further, because the policies provided for split limits of coverage, the policies stated that "the amount shown for 'each person' is the most [Progressive will] pay for all damages due to a bodily injury to one (1) person." Because only one person, the decedent, suffered bodily injury, and because the policies of underinsured-motorist coverage could not be stacked, the total amount of underinsured-motorist coverage available to the insureds under Progressive's policies was $50,000.

{¶ 10} The policies also provided that the limits of liability for underinsured-motorist coverage "shall be reduced by all sums * * * paid because of bodily injury or property damage by or on behalf of any persons or organizations who may be legally responsible * * *; and * * * any other amounts available for

payment for bodily injury or property damage under liability bonds and policies covering persons liable to the insured person." Progressive argues that the $50,000 payment from the tortfeasor entirely offsets the amount of underinsured-motorist coverage available under the policies. Appellant, however, argues that Progressive is not entitled to reduce the limits of underinsured-motorist coverage available to appellant with payments from the tortfeasor that went to persons other than an insured. Because $25,000 of the funds paid by the tortfeasor went to decedent's mother, who was not an insured under appellant's policies, appellant argues that Progressive cannot reduce appellant's underinsured-motorist coverage by the $25,000 received by decedent's mother, a noninsured.

{¶ 11} We find that because decedent was an insured under Progressive's policies, the amount of underinsured-motorist coverage available from Progressive was completely reduced by the $50,000 payment from the tortfeasor to decedent's estate. Appellant is correct that, in general, payments recovered by persons who are not insureds under a underinsured-motorist policy cannot be used to offset the limits of underinsured-motorist coverage available to the insureds. See *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 432, 746 N.E.2d 1077. However, payments to other insureds under a policy do reduce the total amount of underinsured-motorist coverage available to an insured. Id. at 431, 746 N.E.2d 1077.

{¶ 12} For example, in *Littrell,* two occupants of a vehicle were killed and three were injured in a head-on collision. All five occupants were insured by the same policy with Westfield Insurance Company ("Westfield"), with uninsured/underinsured-motorist coverage totaling $500,000 per accident. The tortfeasor's settlement of $1,300,000 was divided between the five occupants. Neither of the two estates, nor any of the three survivors, received $500,000 or more from the tortfeasor. Nevertheless, the Ohio Supreme Court held that because the five occupants were insured under the same policy with Westfield, and the total recovery from the tortfeasor exceeded the amount of underinsured-motorist coverage provided by Westfield's policy, none of the occupants was entitled to any underinsured-motorist coverage. The court noted, however, that had the occupants had separate policies of insurance, they could have each recovered under their own policies:

{¶ 13} "If each of the five occupants of the Pratt minivan had had a separate policy of insurance, then each would have had coverage under his or her own policy up to the single policy limit less any sums received from the tortfeasor's policy." *Littrell,* 91 Ohio St.3d at 431, fn. 7, 746 N.E.2d 1077.

{¶ 14} In fact, the court held that Ernie Pratt, who had not been an occupant of the vehicle, was entitled to underinsured-motorist coverage. As a result of the accident and the payment from the tortfeasor, Ernie received $8,000 from the

proceeds of his grandmother's estate. Ernie, however, had his own policy of insurance with Allstate Insurance Company ("Allstate"), which did not insure any of the minivan occupants, under which he was entitled to underinsured-motorist coverage for the wrongful death of his grandmother. The Ohio Supreme Court held that because Ernie had "a separate automobile liability policy" from that of his grandmother, and because he received less than the $25,000 limit of underinsured-motorist coverage available under his policy, he was entitled to recover underinsured-motorist coverage up to the limits of his policy.

{¶ 15} The court noted that it would be against the policy reasons set forth by the General Assembly to allow Allstate to offset the settlement from the tortfeasor against the limits of Ernie's underinsured-motorist policy when, in fact, those proceeds had been exhausted by payments to parties other than Allstate's own insured. However, the court emphasized that Ernie was able to recover only underinsured-motorist coverage because he had a separate automobile policy from those insuring the injured occupants of the minivan:

{¶ 16} "Moreover, it is only because Ernie has a separate automobile liability policy through Allstate that he is able to recover underinsured motorist benefits. Ernie was not an insured under either the Westfield or Colonial Penn policies that provided underinsured motorist coverage for the occupants of the Pratt minivan. As a result, *if Ernie did not have a separate contract of automobile liability insurance with Allstate, he would have no claim at all for underinsured motorist coverage regardless of the settlement received from the tortfeasor or the policy limits provided in the Westfield or Colonial Penn policies.*" (Emphasis added.) *Littrell,* 91 Ohio St.3d at 432, 746 N.E.2d 1077.

{¶ 17} In this case, because decedent was Progressive's insured, the total amount of uninsured/underinsured-motorist coverage Progressive would be required to pay under its policies as a result of decedent's accident was $50,000. Decedent's estate received $50,000 from the tortfeasor as a result of decedent's wrongful death. According to Progressive's policy, the underinsured-motorist coverage is reduced by all sums paid under liability policies "covering persons liable to the insured person." Because decedent was an insured, any amount paid because of decedent's bodily injuries acted to reduce the limits of underinsured-motorist coverage owed by Progressive to its insureds. Because decedent's estate received $50,000 from the tortfeasor, the entire amount of underinsured-motorist coverage owed by Progressive was offset by the amount received from the tortfeasor. Appellant is therefore not entitled to any underinsured-motorist coverage, because the full amount of underinsured-motorist coverage available under the policy has already been offset by payments to an insured.

{¶ 18} Additionally, we find that our decision herein is consistent with *Harvey v. W. Reserve Mut. Cas. Co.,* 5th Dist. No. 04–COA–045, 2005-Ohio-1721, 2005 WL

845199, wherein the court was faced with identical facts. The insured in *Harvey* had automobile liability insurance with Erie Insurance Company ("Erie"), with underinsured-motorist coverage of $25,000 per person/$50,000 per accident. The insured lived with her mother and her stepfather, the decedents, who were killed in an automobile accident. The decedents' estates each received $25,000 from the tortfeasor. The insured received only $6,050 from her mother's estate and sought the balance of her $25,000 underinsured-motorist coverage from Erie. In *Harvey*, the court held that because the decedents were insureds under Erie's policy, by virtue of the fact that they were "relatives" living with the insured, the amounts paid to the decedents' estates reduced the amount of underinsured-motorist coverage available under Erie's policy. Even though the insured had received less than $25,000, because the decedents were also insureds under Erie's policy, and because the decedents' estates had collectively received $50,000, the court held that the underinsured-motorist coverage had been exhausted.

{¶ 19} We further find that appellant misplaces his reliance on the *Karr v. Borchardt* section of *Littrell*, and on two cases written by this court, *Cordle v. Jackson* (Jan. 18, 2002), 6th Dist. No. H–01–025, 2002 WL 75855, and *Lukasiewicz v. Proudfoot Assoc. of Toledo*, 6th Dist. No. L–03–1296, 2004-Ohio-5245, 2004 WL 2334159. Appellant asserts that the facts in this case are akin to those in *Karr*. In *Karr*, proceeds from the mother's estate were divided among her children. Each of the children sought underinsured-motorist coverage from their automobile liability insurance policies as a result of the wrongful death of their mother. In calculating the amount of underinsured-motorist coverage available, the court offset the limits of underinsured-motorist coverage by only the actual amount each individual claimant received from the estate, rather than by the total amount received by the estate from the tortfeasor. 91 Ohio St.3d at 433–435, 746 N.E.2d 1077.

{¶ 20} We find that the facts in *Karr* are not akin to the facts in this case. Each claimant in *Karr* who sought underinsured-motorist coverage had his or her own automobile liability insurance policy. As was the case with the Pratt family in *Littrell*, if the *Karr* claimants did not have contracts of automobile liability insurance separate from their mother's, they would have no claim for underinsured-motorist coverage. In this case, if appellant had had a liability policy of insurance separate from the decedent's, we agree that he would have been entitled to coverage up to the limits of his underinsured-motorist coverage, less the amount he actually received from the tortfeasor. As it is, because the decedent was an insured under appellant's policy, the payments made to the estate as a result of the decedent's death acted to offset the amount of underinsured-motorist coverage available to appellant.

{¶ 21} We similarly find that our holdings in *Cordle* and *Lukasiewicz* do not conflict with our holding herein. In *Cordle*, we stated:

{¶ 22} "[I]n general, the court [in *Littrell*] determined that [an uninsured-motorist ("UM")] carrier was not entitled to offset the limits of UM coverage available to its insured against amounts recovered by persons who were not insureds under the UM policy. However, where the insureds under the UM policy received payments from the tortfeasor equal to or in excess of the limits of their UM coverage, the insureds were not entitled to UM benefits."

{¶ 23} In *Cordle*, 6th Dist. No. H–01–025, a husband and wife were insureds under the same policy of insurance with underinsured-motorist coverage totaling $50,000. The tortfeasor had liability coverage totaling $50,000 per person/$100,000 per accident. Although the husband had a personal-injury claim and the wife had a loss-of-consortium claim, because they were both insureds under the same policy, their limits of underinsured-motorist coverage were entirely offset by the tortfeasor's liability coverage. Accordingly, we find that our holding herein is not inconsistent with our holding in *Cordle*. In each instance, we have held that payment to an insured under a policy reduces the total amount of underinsured-motorist coverage available to all insureds.

{¶ 24} With respect to *Lukasiewicz*, 2004-Ohio-5245, 2004 WL 2334159, we find that the facts in that case distinguish it from the case herein. In *Lukasiewicz*, a woman was killed in an auto accident. Her son and daughter split the proceeds paid to the mother's estate by the tortfeasor's insurer, each receiving $50,000. The son had underinsured-motorist coverage with Grange Mutual Insurance Company ("Grange") totaling $50,000. There was no indication that the daughter or the decedent was insured by the Grange policy. In calculating what amount of underinsured-motorist coverage the son was entitled to receive, because the son had his own policy of insurance, in accordance with *Littrell*, we offset his underinsured-motorist coverage by only the amount he actually received from the tortfeasor through his mother's estate, not the entire $100,000 paid to the estate. In contrast, in this case, the decedent and appellant were insureds under the same policy. Had the son and the decedent in *Lukasiewicz* both been insureds under Grange's policy, then the son would not have received underinsured-motorist coverage, because the limits of underinsured-motorist coverage would have been completely reduced by the $100,000 payment from the tortfeasor to the mother's estate. Accordingly, based on the distinguishing factors, appellant's reliance on *Lukasiewicz* is misplaced.

{¶ 25} As stated in *Littrell*, "a person injured by an underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasor been uninsured." *Littrell*, 91 Ohio St.3d at 430, 746 N.E.2d 1077, citing *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 276, 744 N.E.2d

719. In this case, the decedent was an insured under Progressive's policies. Had the tortfeasor been uninsured, the total amount of uninsured-motorist coverage that could have been awarded to the decedent's estate, pursuant to Progressive's policies, was $50,000. The decedent's estate received $50,000 from the tortfeasor's liability policy. Accordingly, we find that the entire $50,000 of underinsured-motorist coverage was offset by the $50,000 received by the decedent's estate from the tortfeasor.

{¶ 26} Based on the foregoing, we find that there are no genuine issues of material fact and that Progressive was entitled to summary judgment as a matter of law. Appellant's first assignment of error is therefore not well taken.

{¶ 27} Appellant argues in his second assignment of error that the trial court erred in not granting summary judgment to appellant because Progressive did not respond to appellant's motion for summary judgment before the court-ordered deadline. Civ.R. 56(E) states that "[i]f a party does not so respond, summary judgment, *if appropriate,* shall be entered against the party." (Emphasis added.) Although Progressive's response was untimely, because we have held, as a matter of law, that Progressive was entitled to summary judgment in this declaratory action, we find that the trial court did not err in denying appellant's motion for summary judgment. Appellant's second assignment of error is therefore not well taken.

{¶ 28} The court finds that substantial justice has been afforded the party complaining, and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.

Judgment affirmed.

PIETRYKOWSKI and SKOW, JJ., concur.