OPINION
{¶ 1} Plaintiffs-appellants, Rebecca Young individually and as parent of Jennifer Kynkor and as administratrix of the estate of Jennifer Kynkor, appeal the grant of summary judgment in the Warren County Court of Common Pleas to defendants-appellees, American Family Insurance Company ("AFI"), Timothy Smith, and Smith Insurance Agency. We affirm.[1]
 {¶ 2} Young purchased a one-year AFI automobile liability policy on August 22, 2001. The policy renewed annually, with the latest applicable renewal occurring on August 22, 2003. The policy contained uninsured and underinsured motorist ("UM/UIM") liability limits of $250,000 per person and $500,000 per accident.
 {¶ 3} Young also purchased an umbrella policy from AFI on August 22, 2001, with the same renewal period and renewal dates as the underlying liability policy. The umbrella policy had a $1,000,000 liability limit of coverage. She did not purchase UM/UIM coverage on the umbrella policy and signed a written rejection of UM/UIM coverage at that time. Young did not read the form when she signed it and did not read her declaration sheets or policies when she received them.
 {¶ 4} On September 13, 2003, Young's daughter, Jennifer Kynkor, died from injuries suffered as the result of an automobile accident that occurred the previous day. The tortfeasor's insurance policy paid $261,000 to the Estate of Jennifer Kynkor. The settlement proceeds were divided between Young and Gary Kynkor, the natural parents of Jennifer. Young did not receive the full amount of the $250,000 single person limit under the AFI policy.
 {¶ 5} It is undisputed that the decedent was an insured for purposes of UIM coverage under the AFI policy. The UIM endorsement defines an insured person, in part, as "[a]nyone * * * entitled to recover damages due to bodily injury to you, a relative, or another occupant of your insured car." (Emphasis removed hereinafter.) It also states the following:
 {¶ 6} "We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by an accident and arise out of the use of the underinsured motor vehicle." (Emphasis removed.)
 {¶ 7} The policy also contained the following provisions addressing the UIM coverage liability limits and set-off:
 {¶ 8} "1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
 {¶ 9} "2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.
 {¶ 10} "We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident.
 {¶ 11} "The limits of liability of this coverage will be reduced by:
 {¶ 12} "1. A payment made or amount payable on behalf of any person or organization which may be legally liable, or under any collectible auto liability policy, for loss caused by an accident with an underinsured motor vehicle."
 {¶ 13} The trial court found that Young's only appropriate claim was on behalf of the Jennifer Kynkor's estate and that Young was not entitled to make a claim for her own losses under the wrongful death statute. The court also found that AFI was entitled to set off the $261,000 paid by the tortfeasor's insurer. Because this amount exceeded the AFI $250,000 per person limit, the court found that no additional payment was available even though Young only received $125,000 as a result of the divided settlement proceeds with Gary Kynkor.
 {¶ 14} The court rejected Young's argument that AFI had a legal obligation to include UIM coverage under the umbrella policy, finding that she waived UIM coverage. The court also found that Timothy Smith, Young's insurance agent, and the Smith Insurance Agency did not have any duty to offer or recommend the purchase of UM/UIM coverage when Young procured her policy. The court granted summary judgment in favor of AFI, Timothy Smith, and the Smith Insurance Agency. Appellant now appeals this decision raising two assignments of error.
 {¶ 15} Assignment of Error No. 1:
 {¶ 16} "THE TRIAL COURT ERRED IN HOLDING THAT MRS. YOUNG IS NOT ENTITLED TO UIM BENEFITS AND IN SETTING OFF THE ENTIRE TORTFEASOR'S SETTLEMENT FROM THE AVAILABLE COVERAGE UNDER THE AMERICAN FAMILY CAR POLICY WHEN ONLY HALF THE TORTFEASOR'S SETTLEMENT WAS ACTUALLY AVAILABLE FOR PAYMENT TO APPELLANTS."
 {¶ 17} In the first assignment of error, Young argues that she was entitled to recover damages both personally and as representative of Jennifer Kynkor's estate. She claims that both she and Kynkor were insureds under the terms of the AFI policy. Young further contends that the court erred when it found that AFI was entitled to a setoff for the amount paid by the tortfeasor's insurer arguing that $125,000 of the settlement proceeds were paid to Gary Kynkor, a party who was not an insured under the AFI policy.
 {¶ 18} An appellate court reviews a trial court's decision on a summary judgment motion de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. The trial court's judgment is reviewed independently and without deference to its determination. Id.
 {¶ 19} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is not genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in its favor. See, also, Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 20} For the purposes of determining the scope of coverage on a UIM claim, the statutory law in effect at the time of the parties entering into a contract controls the rights and duties of the contracting parties. Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d 281, 1998-Ohio-381, syllabus. Courts must ascertain the original effective date of the insurance policy and count forward in two year increments because R.C. 3937.31 provides for two-year policy periods, with each policy period mandated by the statute bringing into existence a new contract of insurance, regardless of whether the policy is categorized as a new insurance policy or as a renewal of an existing policy. Arn v.McLean, 159 Ohio App.3d 662, 2005-Ohio-654, ¶ 14, citing Wolfev. Wolfe, 88 Ohio St.3d 246, 2000-Ohio-322.
 {¶ 21} In this case, the policy was originally issued on August 22, 2001, and the two-year term ended on August 22, 2003. The policy was renewed at that time making the law in effect on August 22, 2003 the applicable law to determine the scope of coverage. The applicable law in effect was based on Am. Sub. S.B. No. 267 (effective Sept. 21, 2000). R.C. 3937.31(E), one of the amendments to the statute, stated the following:
 {¶ 22} "Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section."
 {¶ 23} The intent of this amendment was to allow insurers to modify terms and conditions or to incorporate changes at the beginning of any policy period within the two-year period in R.C.3937.31(A). Arn at ¶ 20. However, this division did not affect the result in this case because of the short time period between the policy's renewal date of August 22, 2003 and the date of the September 2003 accident. In the case of an annually renewable policy, as the policy in this case, the insurer could modify terms each year.
 {¶ 24} S.B. 267 also contained amendments designed to overrule the Ohio Supreme Court decisions in Sexton v. StateFarm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431, and Moorev. State Auto. Mut. Ins. Co., 88 Ohio St.3d 27, 31,2000-Ohio-264. Sexton and Moore held that R.C. 3937.18(A), as it existed in 1982, and as it was amended by S.B. 20 in 1994, did not allow insurers to confine UM and UIM coverage to situations where an insured suffers bodily injury. In both Sexton andMoore, the individuals who sustained bodily injury were not classified as insured under the policies, but were relatives of an insured person. Thus, the actual "insured" parties had not sustained bodily injury, but were persons who were legally entitled to recover damages for bodily injury as wrongful death beneficiaries. The Ohio Supreme Court held that the ambiguous policies violated R.C. 3937.18(A) by limiting recovery to persons who had sustained bodily injury.
 {¶ 25} After Sexton and Moore were decided, the General Assembly amended 3937.18(A) in 1997,[2] 2000,[3] and in 2001.[4] In S.B. 267 and S.B. 97, the legislature announced its explicit intent to supersede the holding inSexton. S.B. 267 also indicated the intent to supersedeMoore. See Hedges v. Nationwide Mut. Ins. Co.,109 Ohio St.3d 70, 2006-Ohio-1926, ¶ 12, 19, 43-45. In Hedges, the Ohio Supreme Court recently limited Moore to insurance contracts that are governed by the S.B. 20 version of R.C. 3937.18, which was enacted in 1994. The Supreme Court's decision was based on changes in the statute's subsequent language. Id. at ¶ 27. As a result of the 1997 legislative changes, insurers were allowed to legally restrict UIM coverage to an insured who had sustained bodily injury.[5]
 {¶ 26} Because the policy in this case was commenced after both H.B. 261 and S.B. 267 became effective, we find that AFI was legally permitted to restrict UIM coverage only to an insured who sustains bodily injury. However, we now turn to the policy itself to determine whether the coverage was so restricted. To resolve this issue, we must look at the policy language and give the terms their "plain and ordinary meaning." Cincinnati Indemn. Co.v. Martin, 85 Ohio St.3d 604, 607, 1999-Ohio-322. Any ambiguities in the provisions will be construed strictly against the insurer and in favor of the insured. King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208, syllabus.
 {¶ 27} After reviewing the policy, we find that AFI did not limit UIM coverage only to an insured who sustained bodily injury. As described earlier, the AFI policy defines an insured as "[a]nyone * * * entitled to recover damages due to bodily injury to you, a relative, or another occupant of your insured car." Young was an "insured person" under this definition, because she was entitled to recover damages for bodily injury to a relative. Under Ohio's wrongful death statute, a surviving spouse, parents, siblings, and next of kin have a right to recover damages suffered because of a wrongful death even though the action must be brought in the name of the decedent's personal representative. See Gibson v. State Farm Mut. Auto. Ins. Co.
(1997), 123 Ohio App.3d 216, 225, citing Wood v. Shepard
(1988), 38 Ohio St.3d 86, 89.
 {¶ 28} The policy states that AFI "will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle." Both parties agree that the decedent qualified as an insured under the policy.
 {¶ 29} We find that the trial court erred when it held that the estate of Jennifer Kynkor was the only insured person to whom coverage should be extended. Under the terms of the policy, Young was an insured person legally entitled to recover compensatory damages from the operator of an underinsured motor vehicle, namely the negligent tortfeasor liable for her daughter's death. Young was entitled to make a claim under the policy for the wrongful death.
 {¶ 30} Jennifer Kynkor may have had a survival claim as well. In Monnin v. Fifth Third Bank of Miami Valley, N.A. (1995),103 Ohio App.3d 213, the Second District Court of Appeals stated the following:
 {¶ 31} "R.C. 2305.21 provides that an action for injury to the person or property of a deceased may be brought notwithstanding his death, i.e., a `survivorship action.' * * * In order to maintain that claim, there must be some evidence of conscious pain and suffering by * * * [the decedent] between the injury inflicted and his resulting death." Id. at 227.
 {¶ 32} The facts regarding conscious pain and suffering are not completely clear. Young indicates in her brief that Jennifer sustained a severe closed head injury and massive brain edema, complex facial lacerations, abdominal compartment syndrome and hemorrhagic shock after accident. Jennifer lived for several hours after the accident, but it is not clear whether she was conscious. Since the facts are ambiguous, we will assume for the sake of argument that a survival claim existed. Thus, there were two additional, potential claims under the policy: Young's claim as a wrongful death beneficiary and Jennifer's survival claim.
 {¶ 33} However, as we previously noted, the policy contains certain restrictions as to the UIM limits of liability and allowing set off. The liability limits for UIM coverage contained in the declarations were subject to the following:
 {¶ 34} "1. The limit for each person is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one accident.
 {¶ 35} "2. Subject to the limit for each person, the limit for each accident is the maximum for bodily injury sustained by two or more persons in any one accident.
 {¶ 36} "We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident."
 {¶ 37} The policy's language is unambiguous and consistent with R.C. 3937.18(J), which allows insurers to consolidate all claims arising from or resulting from any one person's bodily injury, including death, to a single claim. Consequently, even if both Jennifer Kynkor and Young had claims, the limit for those claims would be $250,000, the single person limit shown in the declarations.
 {¶ 38} The AFI policy also provides for set off in the following:
 {¶ 39} "The limits of liability of this coverage will be reduced by:
 {¶ 40} "1. A payment made or amount payable on behalf of any person or organization which may be legally liable, or under any collectible auto liability policy, for loss caused by an accident with an underinsured motor vehicle."
 {¶ 41} The tortfeasor's insurer paid $261,000, an amount that exceeded the AFI policy limit of liability. The language of the policy plainly indicates that AFI would not be obligated to pay any further amount. Despite this clear language, Young contends that setoff should be limited to the amount she actually received, not the total amount paid to all beneficiaries of the decedent. Young relies on Littrell v. Wigglesworth,91 Ohio St.3d 425, 2001-Ohio-87, specifically the Karr v. Borchardt
claims discussed in Littrell, to support her argument.
 {¶ 42} In Littrell, the Ohio Supreme Court held the following:
7{¶ 43} "For purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." Id. at syllabus.
 {¶ 44} The Supreme Court applied this principle to various cases within Littrell including Karr v. Borchardt. In Karr,
the tortfeasor's liability policy had limits of $100,000 per person and $300,000 per accident. The tortfeasor's insurer paid $100,000 to the decendent's estate, and this sum was divided equally among the five wrongful death beneficiaries. The beneficiaries then brought claims under their own insurance policies. Although the UIM limits of these policies were equal to or less than the $100,000 already paid, the insurance carriers were allowed to set off only the $20,000 portion as the "amount available for payment" and not the complete $100,000 amount paid to decedent's estate. Littrell, 91 Ohio St.3d at 428, 434.
 {¶ 45} Based on these facts, Young claims that AFI is only entitled to set off the $125,000 "available for payment" to her as a wrongful death beneficiary. However, we find that Karr is factually distinguishable from the case at bar. Specifically, the wrongful death beneficiaries in Karr each had their own insurance policies, under which the decedent was not an insured. In contrast, the decedent in the present case is an insured under Young's policy.
 {¶ 46} We now turn to the Littrell v. Wigglesworth claims part of the Littrell decision. Littrell involved a tortfeasor's payment of $1,300,000 to five occupants of a mini-van. After receiving this payment from the tortfeasor, the five occupants also made UIM claims under a Westfield Insurance policy that covered the five occupants of the vehicle. The Ohio Supreme Court held that the occupants of the mini-van were not entitled to UIM coverage under Westfield's single-limit policy of $500,000. The court reasoned that further payment would have exceeded the amount available from Westfield's policy even though each occupant received less than $500,000 from the tortfeasor. Id. at 431.
 {¶ 47} However, the Ohio Supreme Court allowed one wrongful death beneficiary to make a claim under his own insurance policy with Allstate even though the Allstate UIM per person limits were only $25,000 and the decedent's estate had received $275,000 from the tortfeasor. The beneficiary, the decedent's grandson, Ernie, received only $8,000 from the decedent's estate and the tortfeasor's limits were exhausted by payment to persons other than Allstate's own insured. Id. at 432. The court found that the claim could be maintained stating:
 {¶ 48} "[I]t is only because Ernie has a separate automobile liability policy through Allstate that he is able to recover underinsured motorists benefits. Ernie was not an insured under either the Westfield or Colonial Penn policies that provided underinsured motorist coverage for the occupants of the Pratt minivan. As a result, if Ernie did not have a separate contract of automobile liability insurance with Allstate, he would have no claim at all for underinsured motorist coverage regardless of the settlement received from the tortfeasor or the policy limits provided in the Westfield or Colonial Penn policies.
 {¶ 49} "Therefore, because Ernie did receive $8,000 out of the proceeds paid by the tortfeasor for the wrongful death of Stella Pratt, that is the amount available for payment from the tortfeasor. Ernie is, therefore, entitled to underinsured motorist coverage up to the single, per-person limit of his Allstate policy, reduced by the amount received from the tortfeasor." Id. at 432.
 {¶ 50} Applying the Ohio Supreme Court's reasoning inLittrell to this case, Young would have been able to make a claim under the AFI policy if the decedent was not an insured under the same AFI policy as Young herself. However, because Jennifer Kynkor was an insured under the AFI policy and the $261,000 paid on her behalf by the tortfeasor equaled the AFI policy limits, AFI is entitled to set off that amount. We find that the balance AFI owes, therefore, is zero.
 {¶ 51} We note that the Sixth District Court of Appeals has recently reached the same conclusion in Wickerham v. ProgressiveIns. Cos., 166 Ohio App.3d 180, 2006-Ohio-964. Under nearly identical facts, the Sixth District found that no UIM payment was due where the decedent's estate received $50,000 from the tortfeasor and the decedent was an insured under his father's policies which had equal or lesser limits.
 {¶ 52} Accordingly, AFI is entitled to set off the $261,000 that the tortfeasor paid against AFI's per person limits of $250,000. This leaves a net balance of zero to be paid on behalf of all claims arising out of the injury to Jennifer Kynkor including survivor claims and wrongful death claims. The trial court reached the correct conclusion when it granted summary judgment in AFI's favor even though it incorrectly concluded that Young could not make a claim under the policy. The first assignment of error is overruled.
 {¶ 53} Assignment of Error No. 2:
 {¶ 54} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS-APPELLEES WITH RESPECT TO THE ALLEGED BREACH OF DUTIES ON PART OF TIMOTHY L. SMITH AND THE SMITH INSURANCE AGENCY AS THE INSURANCE AGENT FOR THE PLAINTIFFS."
 {¶ 55} In the second assignment of error, Young argues that the trial court erred when it granted summary judgment in favor of Smith and Smith Insurance Agency. She claims that there is a genuine issue of material fact whether Smith and the agency breached a duty to exercise due care in providing insurance coverage. As mentioned previously, Young purchased UIM coverage for the underlying liability policy, but she did not purchase UIM coverage for the $1,000,000 umbrella policy. Young claims that she would have purchased UIM coverage for the umbrella policy if Smith had properly explained the coverage.
 {¶ 56} In the insurance context, an action for negligence may be based upon an insurance agent's failure to procure insurance.Minor v. Allstate Ins. Co. (1996), 111 Ohio App.3d 16, 21. An agent will be held liable if, "as a result of his or her negligent failure to [procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking." Id.
 {¶ 57} An insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance which its customer requests. First Catholic Slovak Union of U.S. andCanada v. Buckeye Union Ins. Co. (1986), 27 Ohio App.3d 169, 170
(citing Stuart v. Natl. Indemn. Co. [1982], 7 Ohio App.3d 63,66). The insured has the corresponding duty to examine the policy, know the extent of its coverage, and notify the agent if said coverage is inadequate. The Island House Inn, Inc. v. StateAuto Ins. Cos., 150 Ohio App.3d 522, 2002-Ohio-7107. See alsoRose v. Landen, Warren App. No. CA2004-06-066, 2005-Ohio-1623. "An agent or broker is not liable when a customer's loss is due to the customer's own act or omission." Craggett v. Adell Ins.Agency (1993), 92 Ohio App.3d 443, 453.
 {¶ 58} There was no evidence of a fiduciary relationship in the present case. Young had been insured with Westfield, through the Dakin Insurance agency, since she was 16 years old. She carried both an underlying auto policy and an umbrella liability policy with Westfield before she switched to AFI. The Westfield umbrella policy which became effective on August 28, 1999 did not contain UIM coverage. Young rejected the UIM coverage in writing on August 16, 1999.
 {¶ 59} In August 2001, Westfield decided to discontinue the Youngs' coverage because of Jennifer Kynkor's accident history. Dakin attempted to place the Youngs with other carriers the agency handled, but the carriers declined to provide coverage or would only provide coverage at a price that Young believed was too expensive.
 {¶ 60} Consequently, Young searched for coverage on the internet and asked AFI, via the internet, to be contacted about insurance. Smith contacted Young on behalf of AFI and procured insurance based on the information she had given AFI including the information in the auto application and personal liability umbrella application. Smith obtained the same coverage the Youngs had possessed under their previous auto and umbrella policies.
 {¶ 61} Young had worked for twenty years as a paralegal and understood the legal significance of signing documents. When she met with Smith, she was given a pamphlet explaining UM/UIM coverage. Under Young's previous insurance policy, she understood the types of damages UM/UIM covered, the difference between UIM and liability coverage, and the fact that UM/UIM coverage could be purchased with different limits.
 {¶ 62} When Young applied for insurance with AFI in August 2001, she signed a form rejecting UM/UIM coverage on the umbrella policy. She later claimed that she did not read the form. She also received a copy of the declarations page and umbrella policy, but she did not read either. The AFI umbrella policy was renewed annually without UM/UIM coverage on August 22, 2002 and August 22, 2003.
 {¶ 63} As of October 31, 2001, S.B. 97 amended R.C.3937.18(A) eliminating the requirement that insurers offer UM or UIM coverage. See Arn v. McLean, 159 Ohio App.3d 662,2005-Ohio-654, ¶ 22. S.B. 97 also removed any requirement of a written offer or rejection of UM or UIM coverage. Therefore, when the policy was renewed on August 22, 2003, AFI did not have to offer or include UIM coverage nor was there need for a written offer or rejection of such coverage.
 {¶ 64} An agent will be held liable if, "as a result of his or her negligent failure to [procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking."Minor v. Allstate Ins. Co., 111 Ohio App.3d at 21. However, in this case, the agent did not violate his duty to exercise good faith and reasonable diligence in obtaining the insurance requested by Young. She was given the coverage that she requested which was the same coverage she had previously had with Westfield. With her long employment as a paralegal, Young was not only informed about UM/UIM coverage, but in fact had a better understanding than most consumers.
 {¶ 65} Notably, Young had underlying UIM coverage with limits of $250,000 per person and $500,000 per accident, which substantially exceed the minimum financial responsibility limits in Ohio. See R.C. 4509.01(K) (mandating limits of $12,500 per person and $25,000 per accident). Young also explicitly rejected UIM coverage for her umbrella policy on two occasions. She claims that she would have purchased UIM coverage under the umbrella policy had it been properly explained, but there is no evidence that supports this assertion. There is no evidence that UIM coverage was improperly explained. Young rejected expanded UIM coverage in both 2001 and 2002 and there is no evidence that she would have purchased additional coverage in August 2003.
 {¶ 66} There is no evidence that Young relied on Smith's experience to determine the amount of coverage she wanted. Young did not ask for UIM coverage under the umbrella policy, and AFI was not obligated to offer it. She failed to read her policy and the declarations page.
 {¶ 67} Based on the foregoing discussion, we find that summary judgment was properly granted in favor of Smith and the Smith Insurance Agency. They did not breach a duty of care regarding Young's insurance policy. She was given the insurance she requested and is charged with knowledge of the content of her insurance policies. First Catholic Slovak Union of U.S. andCanada, 27 Ohio App.3d at 170. Accordingly, the second of assignment of error is overruled.
Judgment affirmed.
Powell, P.J., and Brogan, J., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] Am. Sub. H.B. No. 261.
[3] Am. Sub. S.B. No. 267.
[4] Am. Sub. S.B. No. 97.
[5] The dissent in Hedges agreed that revised statutory language in S.B. 267, effective in 2000, allowed insurers to limit UIM coverage to situations where the insured suffers bodily injury. Hedges at ¶ 46 (Resnick, dissenting). However, the dissent felt the changes in language before that time were not sufficient. Id. at ¶ 30-41.