**BOEHM, Admr.**

v.

**BUTCHER et al.**

2007-Ohio-6576.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2006 CVC 1646.

Decided Sept. 7, 2007.

Katzman, Logan, Halper & Bennett, and Philip A. Logan, for plaintiff.

Adam E. Carr, for defendant National General Assurance Company, a GMAC Insurance Company.

Victor M. Haddad, Judge.

{¶ 1} This matter came before the court on July 11, 2007, pursuant to competing motions for summary judgment. The plaintiff was represented by attorney Philip Logan. The defendant was represented by attorney Adam Carr. The parties have briefed their positions, and upon hearing oral arguments, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} The plaintiff, Jennifer Boehm, and the defendant, National General Assurance Company, a GMAC Insurance Company ("NGAC"), have stipulated to the following facts in relation to their motions for summary judgment: [1]

{¶ 3} This case stems from a tragic vehicle collision that occurred on October 22, 2004. Katelyn Earls was a 14–year–old passenger in a Honda Civic operated by Richard Butcher. At approximately 9:11 p.m. on October 22, 2004, the automobile went left of center at the intersection of State Route 131 and Township Route 631, colliding with another vehicle. The sole, proximate cause of the collision was the negligence of Richard Butcher. Katelyn Earls was killed in the collision.

{¶ 4} At the time of the collision, Katelyn Earls lived with her mother, Jennifer Boehm, and Katelyn's grandmother, Mary Boehm. Jennifer Boehm qualifies as an insured under an automobile policy issued by NGAC. The policy provided coverage with bodily-injury liability limits of $50,000 per person and $100,000 per accident. It also provided uninsured- and underinsured-motorist ("UM/UIM") coverage in the amounts of $50,000 per person and $100,000 per accident, subject to the declarations, terms, conditions, and exclusions stated in the policy. There was no other automobile policy in effect insuring the residents of the Boehm household.

{¶ 5} Richard Butcher had bodily-injury liability limits of $100,000 from Nationwide. Those limits have been offered for the wrongful death of Katelyn Earls subject to probate court approval. None of those funds have been distributed as of the date of this decision.

## THE LEGAL STANDARD

{¶ 6} In considering a motion for summary judgment, the court will look at the pleadings, depositions, answers to interrogatories, written admissions, affidavits,

---

1. Stipulation of plaintiff and defendant National General Assurance Company, a GMAC Insurance Company, May 21, 2007 ("Stipulation"), ¶ 1–11.

transcripts of evidence in the pending case, and written stipulations of fact. Civ. R. 56(C). Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 7} The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id. at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, ¶ 18, citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. The moving party cannot discharge its initial burden by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264. The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. Id.

{¶ 8} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ. R. 56, must set forth specific facts showing the existence of a genuine triable issue." Civ. R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359–360, 604 N.E.2d 138.

{¶ 9} "[W]here the moving party indicates that the evidentiary materials submitted disclose an absence of evidence to support the nonmoving party's claim, and the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to his case and on which he will bear the burden of proof at trial, there are no genuine issues of material fact and Civ.R. 56(C) mandates the entry of summary judgment in favor of the moving party." *Wilson v. Fifth Third Bank of S. Ohio* (June 13, 1994), Brown App. No. CA94–01–001, at 2, 1994 WL 250144, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, and *Morris v. Children's Hosp. Med. Ctr.* (1991), 73 Ohio App.3d 437, 439–440, 597 N.E.2d 1110.

## LEGAL ANALYSIS

{¶ 10} There are competing motions for summary judgment filed in this case. Both parties filed their motions for summary judgment on May 30, 2007. The defendant, NGAC, filed a response to the plaintiff's motion on June 26, 2007, and the plaintiff filed a response to the defendant's motion on June 29, 2007. Attached to the plaintiff's response were the affidavits of Jennifer Boehm and Mary R. Boehm. NGAC filed a motion to strike these affidavits on July 9, 2007, on the basis that the affidavits indicated that there was a second policy with Jennifer Boehm as a named insured. This contradicted the parties' stipulation that there was only one insurance policy with Jennifer Boehm as an insured.[2] This matter was discussed at oral arguments, and both parties agreed that there is one policy with Jennifer Boehm as an insured.[3] The court did not grant the defendant's motion to strike, since there was no disagreement that Jennifer Boehm was an insured under the NGAC policy. It is not relevant to this motion whether Jennifer Boehm is a named insured under the policy, since NGAC admits that she is an insured because she resides in the same household as Mary Boehm, who is a named insured under the policy. The parties did not agree as to whether Jennifer Boehm's claim is appropriate under the policy.

{¶ 11} The plaintiff argues in her motion for summary judgment that she is entitled to underinsured-motorist ("UIM") coverage under the NGAC policy to the extent that it is offset by the amount, if any, she actually receives from the tortfeasor's insurance, up to the $50,000 per person limit. The defendant, on the other hand, argues in its motion for summary judgment that Jennifer Boehm is entitled to UIM coverage only to the extent that it is offset by the amount the tortfeasor's liability insurance actually pays. The tortfeasor's insurance has paid $100,000 into Katelyn Earls's estate; therefore, the defendant actually argues that Jennifer Boehm would not be entitled to recovery under the NGAC policy, because the estate has received an amount in excess of the $50,000 UIM policy limit.

{¶ 12} The defendant stated in his oral argument, and the plaintiff did not deny, that Katelyn Earls is an insured under the NGAC policy. Further, the policy provides that an insured for the purposes of UM/UIM coverage means " 'you' or any 'family member'." [4] The court finds that Katelyn Earls is a family

---

2. Stipulation ¶ 7, 10.

3. This policy became effective on May 18, 2004.

4. Stipulation ¶ 6, Exhibit A, Endorsement 2120 (11012002), Definition A(1).

member of both Jennifer Boehm and Mary Boehm; thus Katelyn Earls is an insured under the NGAC policy.

{¶ 13} The NGAC policy further provides:

"Underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a bodily injury liability bond or policy applies at the time of the auto accident and where the limits of coverage *available for payment* to the "insured" under all bodily injury liability bonds and policies covering persons liable to the "insured" are less than the limits for the underinsured motorist coverage provided under this policy.

(Emphasis added.) [5]

{¶ 14} The phrase "available for payment" in the NGAC policy is derived from R.C. 3937.18, which provides that "the policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." R.C. 3937.18(C). The phrase "amounts available for payment" under the statute means "the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 744 N.E.2d 719, syllabus.[6] See, also, *Littrell v. Wigglesworth* (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, syllabus, citing *Clark*.

{¶ 15} The plaintiff cites *Littrell v. Wigglesworth*, which includes *Karr v. Borchardt*, in support of her argument that she is entitled to the difference between the amounts she actually receives from the tortfeasor's liability policy and the $50,000 UIM limits under the NGAC policy.

{¶ 16} In *Karr*, the tortfeasor was insured under a liability policy with limits of $100,000 per person and $300,000 per occurrence. The parties settled their claims against the tortfeasor, and $100,000 was paid into the decedent's estate. This sum was divided equally between the five wrongful-death beneficiaries, and each beneficiary subsequently filed a claim against his or her own individual insurance policies. The Supreme Court found that the insurance carriers were permitted to set off only the amounts that the beneficiaries actually received and not the full $100,000. *Littrell*, 91 Ohio St.3d at 434–435, 746 N.E.2d 1077. Based

---

**5.** Id. Definition C.

**6.** The court is mindful that the Supreme Court in *Clark* was asked to interpret R.C. 3937.18(A)(2) as modified by S.B. No. 20, effective October 20, 1994, and not as amended in 2001 Sub.S.B.No.97, effective October 31, 2001. However, the phrase "amounts available for payment" of R.C. 3937.18(C) as applied to the case at bar is nearly identical to the language of R.C. 3937.18(A)(2) that the Supreme Court considered in *Clark*.

on these facts, the plaintiff alleges that NGAC is entitled to set off only the amount that she will receive from the $100,000 paid to the estate and not the full $100,000. However, this court finds that *Karr* is factually distinguishable. The Karr beneficiaries were seeking UIM coverage under their own policies, under which the decedent was not insured. Katelyn Earls, the decedent in this case, is an insured under the NGAC policy.

{¶ 17} In *Littrell*, two decedents and three other passengers were involved in a collision with the tortfeasor. The tortfeasor was insured under a liability policy with limits of $100,000 per person and $300,000 per accident. He was also insured under a $1 million liability umbrella policy. The tortfeasor tendered $1,300,000 to the estates of the decedents. The five occupants of the decedents' vehicle were insured under a policy with a single policy limit of $500,000. Each occupant and the decedents' estates actually received less than the $500,000 policy limit. The Supreme Court held that had the tortfeasor been uninsured, the maximum amount available to the five occupants would have been $500,000. *Littrell*, 91 Ohio St.3d at 431, 746 N.E.2d 1077. The amount available for payment was $1,300,000. Id. This amount exceeded the UIM policy limit; therefore, the occupants of the decedents' vehicle were not entitled to UIM benefits. Id. The court found that had each of the five occupants had separate policies, then each could have recovered under his or her own policy up to the policy limit minus any sums received from the tortfeasor. Id. at fn. 7. The court further found that the grandson of one of the decedents had purchased a separate policy and was thus permitted to recover the difference between his UIM policy limit of $25,000 and the $8,000 that he received from his grandmother's estate. The court found that it was only because he had a separate policy that he was entitled to UIM benefits. Id. at 432, 746 N.E.2d 1077.

{¶ 18} The plaintiff also cites *Kotlarczyk v. State Farm Mut. Auto. Ins. Co.*, Lucas App. No. L–03–1103, 2004-Ohio-3447, 2004 WL 1468336, in support of her argument. In *Kotlarczyk*, the decedent was killed in a collision. The decedent was a named insured under a policy with UIM limits of $100,000 per person and $300,000 per accident. At the time of the accident, the decedent lived with her mother and the decedent's two minor children. The tortfeasor's policy limit of $100,000 was paid into the decedent's estate and was divided between her two minor children. The decedent's mother received nothing. The decedent's mother had her own separate policy with a UIM policy limit of $100,000 per person. The Sixth District Court of Appeals held that because the mother received nothing from the estate, the tortfeasor was underinsured as to the mother, and she was entitled to receive $100,000 in UIM benefits under her own policy. Again, *Kotlarczyk* is distinguishable, since the mother in that case had a policy that was separate and apart from the decedent's policy. In *Kotlarczyk*, the

decedent and her mother were covered by one policy together, but the mother also had an additional separate policy under which her daughter was not an insured. In this case, both Katelyn Earls and Jennifer Boehm are insured under the same policy.

{¶ 19} The court finds that *Westfield Natl. Ins. Co. v. Young,* Warren App. No. CA2005-12-135, 2006-Ohio-5839, 2006 WL 3182909, is more directly on point for this case. In *Young,* decedent's mother purchased a liability insurance policy, which contained UM/UIM limits of $250,000 per person and $500,000 per accident. The tortfeasor's insurance paid $261,000 to the decedent's estate. These proceeds were divided equally between the decedent's parents, with each receiving $125,000. The parties did not dispute that the decedent was an insured under her mother's policy. The court in *Young* applied the reasoning in *Littrell* and found that the decedent's mother "would have been able to make a claim under the AFI policy if the decedent was not an insured under the same AFI policy." *Young* at ¶ 50. The court further found that because the daughter was an insured under the policy and the $261,000 paid on her behalf equaled the mother's policy limits, the insurance company was entitled to set off that amount. Id. The balance owed to the mother by the insurance company was zero. Id. See, also, *Wickerham v. Progressive Ins. Cos.* (2006), 166 Ohio App.3d 180, 2006-Ohio-964, 849 N.E.2d 1070, at ¶ 11 ("because decedent was an insured under Progressive's policies, the amount of underinsured-motorist coverage available" to appellant "from Progressive was completely reduced" by the tortfeasor's settlement with the decedent's estate) and *Harvey v. W. Res. Mut. Cas. Co.,* Ashland App. No. 04-COA-045, 2005-Ohio-1721, 2005 WL 845199 ("appellant's UM/UIM coverage is offset by the amounts received" by the decedents' estates "since they were persons 'protected' under the UM/UIM Endorsement").

{¶ 20} The plaintiff also points to *Wallace v. Balint* (2002), 94 Ohio St.3d 182, 2002-Ohio-480, 761 N.E.2d 598, in support of her argument. *Wallace* is distinguishable, however, since the Supreme Court in that case was dealing with antistacking provisions of an insurance policy and not the insurance company's right to set off.

{¶ 21} The court agrees with the plaintiff that if Jennifer Boehm had a policy of insurance separate from Katelyn Earls, she would be entitled to the UIM policy limits less the amount she actually receives from the estate. However, because Jennifer Boehm and Katelyn Earls were insured under the same insurance policy, the payments made by the tortfeasor to Katelyn's estate acted to offset the amount of UIM coverage available to the plaintiff.

{¶ 22} The parties have also presented as an issue whether Jennifer Boehm is entitled to proceed under a claim for loss of consortium or whether she

must proceed under a theory of wrongful death. The court finds that this is not an issue in this case, since the NGAC policy provides:

"The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorist/Underinsured Motorists Bodily Injury Coverage, if purchased, is 'our' maximum limit of liability for all damages for '*bodily injury*' sustained by any *one person* in any one accident. This includes all derivative claims arising out of said 'bodily injury' *which includes*, but is not limited to, damages for care, loss of service or death, *loss of consortium*, or loss of society or companionship. * * * This is the most 'we' will pay under PART C— Uninsured Motorist/Underinsured Motorists Coverage, whichever is applicable, as a result of any one accident regardless of the number of

1. 'Insureds';
2. Claims made;
3. Premiums or autos shown in the Declarations;
4. Vehicles involved in the accident;
5. Lawsuits brought; or
6. Premiums paid.
7. Policies applicable"

(Emphasis added.) [7]

{¶ 23} The policy defines "bodily injury" as "bodily harm, sickness or disease, including death." [8] The court finds that Katelyn Earls suffered bodily injury in the form of death as a result of this collision. Katelyn Earls was the only person under this policy to suffer such an injury. Therefore, the policy limits all derivative claims resulting from this injury, including claims for death and loss of consortium, to the single per-person limit of the policy. Therefore, it is a distinction without a difference whether Jennifer Boehm is proceeding under a claim for wrongful death or loss of consortium, since the plaintiff agreed in her oral arguments that she is entitled to a maximum of $50,000, which is the per-person limit of her policy.

### CONCLUSION

{¶ 24} While the court is mindful that this case arises as a result of the tragic and premature death of a 14-year-old child, the court simply cannot disregard the law. The law provides that since Katelyn Earls was an insured under the same policy as her mother, the payment to the estate must be set off against her

---

7. Stipulation ¶ 6, Exhibit A, Endorsement 2120 (11012002), Limit of Liability, A.

8. Stipulation ¶ 6, Exhibit A, Personal Auto Policy, p. 1, definitions.

UIM policy limits. The tortfeasor's insurance company paid his policy limit of $100,000 to the estate of Katelyn Earls; therefore, that amount must be set off against the UIM policy limit of $50,000. Since the settlement exceeds the policy limit, the court finds the amount to which Jennifer Boehm is entitled under the NGAC UIM policy to be zero.

{¶ 25} In light of the foregoing analysis, and based upon the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, reasonable minds could only conclude that the total amount paid to the decedent's estate is to be set off against the claimant's UIM policy limits, and, thus, NGAC is entitled to judgment as a matter of law. The court hereby grants defendant's, NGAC's, motion for summary judgment and denies the plaintiff's motion for summary judgment.

{¶ 26} It is ordered that this decision shall serve as the judgment entry in this matter.

{¶ 27} It is further ordered that the court finds no just cause for delay.

Judgment accordingly.